## PARTNER SEPARATION AGREEMENT

This Partner Separation Agreement ("Agreement") is entered into on April 22, 2016 (the "Effective Date") by and between Zurvan Mahamedi ("Mahamedi") and William L. Paradice ("Paradice"), collectively referred to as "Partners."

## RECITALS

A.  Mahamedi and Paradice are the sole partners of Mahamedi Paradice, LLP, a California limited liability partnership ("Partnership") which does business at 1901 South Bascom Ave, Suite 600, Campbell, CA 95008. The Partnership was formed for the purpose of practicing law and both Mahamedi and Paradice are licensed to practice law in the State of California and are active members of The State Bar of California.

B.  Mahamedi and Paradice operate the Partnership under the provisions of a written partnership agreement entitled the Second Amended and Restated Limited Liability Partnership Agreement of Mahamedi Paradice, LLP ("Partnership Agreement"), dated on or around December, 2014, which is incorporated herein by reference.

C.  Paradice now wishes to withdraw from the Partnership and form his own law firm (the "Paradice Practice") and the parties wish to take further actions related to the withdrawal as further set forth below.

Therefore, the Partners agree as follows.

## AGREEMENT

1.  Recitals. The Recitals of fact stated above are agreed to be true and correct and are incorporated by reference.

2.  Withdrawal. The effective date by which Paradice is deemed to have withdrawn from the Partnership shall be April 30, 2016 (the "Withdrawal Date"). On such date, Paradice shall assign his Partnership interest as directed by Mahamedi, and Mahamedi will continue the Partnership by adding a partner, subject to Paradice's name being removed from the Partnership. Notwithstanding such Withdrawal Date, Paradice shall no longer work in the Partnership's offices after April 22, 2016.

3.  Lease. In the event the Partnership does not obtain both sublandlord's and master landlord's consent to the continuation of the sublease currently in effect for the Partnership's offices located at 1901 South Bascom Ave., Suite 600, Campbell, California, with no change in terms other than the change in name of the Partnership to Mahamedi IP Law, LLP, Paradice will reimburse the Partnership for 50% of the moving company charges incurred by the Partnership.

4.  Final Income Allocation, Capital Accounts, Liabilities. The Partners will allocate profits and losses and file a short year tax return for the period from January 1, 2016 through April

30, 2016, such that Paradice is not allocated any profit or loss for the period post-Closing. Paradice will not receive any payment from the Partnership, except in accordance with Section 11 below and Schedule C, and an amount equal to the funds forfeited to the firm from Paradice's personal contributions to his profit sharing account. All current accounts payable not paid by the Partnership as of April 30, 2016 will be allocated to each Partner in accordance with Section 11 and Schedule C. In no event, however, shall Paradice be responsible for any current accounts payable not paid by the Partnership that are associated with clients of Mahamedi, nor shall Mahamedi be responsible for any accounts payable not paid by the Partnership as of April 30, 2016 or invoices received after that date that are associated with clients of Paradice. All such invoices shall be forwarded upon reeipt to the Paradice Practice for direct payment.

5. <u>Government Notifications</u>. Mahamedi shall cause the Limited Liability Partnership Notice of Change of Status to be filed in the office of the California Secretary of State changing the name of the Partnership if he elects to continue the Limited Liability Partnership, or will terminate the Partnership with the Secretary of State. The Partners agree to cooperate in filing any further notices or documentation required with federal, state, or local government entities, including the State Bar of California, regarding the change in name and ownership of the Partnership.

6. <u>Partnership Website</u>. By May 1, 2016, Mahamedi will use best efforts to modify the Partnership's website to reflect the change in the name of the Partnership and to only list the current Partnership personnel.

7. <u>Email Addresses</u>. As of the Withdrawal Date and continuing until December 31, 2016, the email addresses for wparadice@mppatentlaw.com, wparadice@mpkpatentlaw.com and qualcomm@mppatentlaw.com shall be set to forward all emails to the email addresses to be provided by Paradice. The current Partnership email addresses for Paradice and his continued employees shall not provide any automatic replies to the senders unless the language is agreed to in advance by Paradice and Mahamedi.

8. <u>Prolaw Database</u>. Mahamedi shall make available to Paradice for copying the Prolaw database files requested by Paradice which relate to clients that have provided written consent to transfer their files to the Paradice Practice. In the event Paradice cannot, despite reasonable efforts, obtain a licensed copy of ProLaw by May 7, 2016, Mahamedi will provide access to the relevant ProLaw files and software to Paradice at no cost to Mahamedi through May 7, 2016.

9. <u>Client Transfers</u>. Paradice will fulfill his ethical obligations to certain clients of the Partnership by disseminating notices of the withdrawal of Paradice from the Partnership, in substantially the form attached hereto as **Schedule A**. Paradice covenants that in the event that a malpractice suit is filed against the Partnership or its successor entity related to any file that has been transferred to the Paradice Practice, Paradice shall immediately provide Mahamedi and the Partnership with full access to that client's file (with any work done post-Closing segregated or separately demarcated) for purposes of defending the suit.

    10.    USPTO. The Partners shall cooperate with each other to transfer the US Patent and Trademark Office ("USPTO") numbers set forth on **Schedule B** to Paradice. Additionally, the Partners shall cooperate to remove each other and their respective employees from each USPTO number no longer associated with that Partner.

    11.    Accounting. Mahamedi shall cause an accounting to be made as of April 30, 2016 of all of the accounts receivable of the Partnership. Accounts receivable will include all outstanding accounts receivable of the Partnership as of April 22, 2016.

    (a)    Distributions of Partner Hours Collected. The Partnership will make a distribution to each Partner in the amount of all of such Partner's Partner hours collected on or before April 29, 2016 on or before April 29, 2016. In the event Freja Evans does not provide this information on or before April 29, 2016, the Partnership will use best efforts to make this distribution no later than May 7, 2016. The Partnership will allow Freja Evans full access to accounting information and software to reconcile the Qualcomm payments with outstanding invoices in order to satisfy this paragraph (a).

    (b)    Standard Distribution. The Partnership will make distributions to each Partner, in accordance with the standard Partnership past practices for bimonthly income distributions, on or before May 17, 2016 for amounts collected by the Partnership by April 30, 2016 and on or before June 17, 2016 for amounts collected by the Partnership by May 31, 2016 and all receivables deemed collected, all subject to paragraph (c) below.

    (c)    Accounts Receivable. The Partnership's accounts receivable collected after April 22, 2016 will be distributed as part of the final distribution to Paradice per (b) above, in accordance with the calculations on **Schedule C**, attached hereto, which schedule shall set forth an invoice by invoice breakdown and shall include (i) the amount to be paid to Mahamedi for each invoice, (ii) the amount to be paid to Paradice for each invoice, (iii) the client related expenses associated with each invoice to be reimbursed to the Partnership, and (iv) the costs owed by Paradice to the Partnership related to one-half of outstanding current accounts payable as of April 30, 2016 not already included in (iii) above and specifically excluding any and all amounts associated with expenses accrued and/or incurred by clients of Mahamedi. For purposes of the accounting, all outstanding accounts receivable as of May 31, 2016 shall be considered to be paid-in-full, without regard to client related expenses related to uncollectable accounts receivable. The Partnership shall pay any amounts owed to Paradice under this paragraph as part of the June 17, 2016 distribution under paragraph (b) above, but only after all client related expenses associated with all invoices set forth on Schedule C have been paid in full. Foreign associate invoices attributable to Paradice clients and not yet paid or billed to the client shall be transferred to the Paradice Practice for payment and reimbursement.

(d) <u>Work-In-Process</u>. Work-in-process shall stay with the Partnership or be transferred to the Paradice Practice, depending on which Partner holds origination credit for such client.

(e) <u>Amounts included in Schedule C</u>. The Partners agree that Paradice will be entitled to an additional amount in his final distribution to include the total amount of profit sharing funds forfeited to the Partnership by Paradice on or after his departure. In no event will Paradice receive any credit or distribution for the value of the assets of the Partnership or the amount of his capital account. In exchange, Mahamedi agrees that the Partnership will not offset the amounts due to Paradice in any way other than to cover the current accounts payable as set forth in paragraph (c) above. Paradice will not be charged for any accrued liabilities of the Partnership, for any discrepancies or true-ups for amounts of work-in-process, nor charged for any amounts paid in the past by the Partnership such as bonuses to employees that will be joining the Paradice Practice, or any costs incurred after April 30, 2016. For purposes of clarity, the Partnership will retain all liabilities. In no event will Paradice be asked to contribute additional funds or reimburse the Partnership for any amounts, nor have the amounts due to him under Schedule C be reduced.

12. <u>Tax Matters Partner.</u> For purposes of Internal Revenue Code Section 6231 (as amended), Mahamedi shall represent the Partnership in connection with all examinations of the Partnership's affairs by tax authorities. Mahamedi shall have the responsibility of ensuring the accounting for the Firm's tax filings are done competently, accurately and on time, and Paradice shall provide full cooperation to Mahamedi on request in furtherance of enabling Mahamedi to fulfill this responsibility. Upon receipt of any notices or documentation from taxing authorities, Mahamedi agrees to forward (within 72 hours of receipt) copies of such correspondence or documentation to Paradice. In the event of an adjustment as the result of a tax audit or other notice related to the period prior to April 30, 2016, the Partners shall each be liable for 50% of such adjustment unless the adjustment was the direct result of an intentional act or grossly negligent act of one Partner, in which case such Partner shall be 100% liable and shall indemnify and hold harmless the other Partner.

13. <u>Assets</u>. Absent any specific purchase agreements that may be reached, the assets will stay with the Partnership except for those assets allocated to Paradice as set forth in Schedule B (Assets Allocated to Paradice), attached hereto.

14. <u>Banking, Line of Credit</u>. Paradice shall transfer all Partnership banking authority and access to Mahamedi. Within one week of Paradice's departure date, Mahamedi shall use commercially reasonable efforts to have Paradice removed as a guarantor of the Partnership's current line of credit with Comerica Bank. Mahamedi shall indemnify Paradice from any liability under the personal guaranty post-Closing. From the Effective Date of this Agreement, Mahamedi shall not charge any items to Paradice's personal American Express charge card. Mahamedi shall reimburse Paradice for any unreimbursed amounts charged to Paradice's personal American Express charge card prior to the Closing for Mahamedi's client expenses, if any. From the Effective Date of this Agreement, Paradice shall not charge any items to the Partnership's line of

credit with Comerica Bank. Paradice shall reimburse Mahamedi for any unreimbursed amounts charged to the Partnership line of credit prior to the Closing for Paradice's client expenses, if any.

15. Right to Use Name and Logo. Effective as of the Withdrawal Date, Paradice shall not have the right to use the name or logo of the Partnership except for personal biographical reasons, or except as may be required by law. Additionally, Mahamedi shall remove "Paradice" from the name of the Partnership as required by law.

16. Representations and Warranties. Except as disclosed in the books and records of the Partnership, each of the Partners represents and warrants that to the best of that Partner's knowledge the Partner has not incurred any debt, entered into any contract, or incurred any liability on behalf of the Partnership other than those on the books of the Partnership as of the Effective Date.

17. Inspection of Books and Records. Paradice shall have the right, directly or through a representative designated in writing, at all reasonable times, to examine the books of the Partnership, and records pertinent thereto through April 30, 2016, for the purpose of establishing and enforcing Paradice's rights under this Agreement. Thereafter, Paradice shall have the right, at all reasonable times, to examine the accounts receivable receipts of the Partnership for invoices listed on Schedule C.

18. Passwords. Paradice will cooperate fully, and will use his best efforts to cause Freja Evans to cooperate fully, with providing all passwords to Mahamedi for the operation of the Partnership.

19. Malpractice Claim Indemnification. Each Partner agrees to indemnify, defend, and hold the Partnership, and the other Partner and his representatives, attorneys, agents, successors and assigns (the "Indemnified Persons"), harmless against any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies, that the Indemnified Persons may incur or suffer from any malpractice action brought against the Partnership as a result of any action or inaction by such Partner, including malpractice claims to the extent they exceed the Partnership's malpractice policy coverage, and including the cost of any malpractice deductible, so long as such action is not due to the negligence or intentional misconduct of the other Partner in which case such other Partner shall not be indemnified under this Section. This provision shall survive the Closing, and shall apply to Paradice to the extent such claim relates to the period of time during which he was a Partner.

20. Mutual Nondisparagement. The parties agree that they will not, and will not cause or encourage others to, publish, discuss or disseminate in any manner (including by e-mail, blog, or any other computer or electronic media), either directly or indirectly, any disparaging statements, representations, inquiries or remarks about, or concerning, any of the parties, their agents, employees, successors, assigns, businesses or personal lives. The parties further agree that they will not defame each other or the Partnership.

21. <u>Release</u>. Each Partner, on behalf of himself and his representatives, attorneys, agents, partners, officers, directors, employees, subsidiaries, affiliates, successors and assigns, and each of the foregoing, hereby waives and releases the Partnership and its respective representatives, attorneys, agents, partners, officers, directors, shareholders, employees, subsidiaries, affiliates, divisions, successors and assigns, and each of the foregoing, from any and all obligations, actions, causes of actions, claims, demands, damages, rights to profits, liabilities, obligations, costs and expenses (including attorneys' fees) of any kind or nature, known or unknown arising on or prior to the Effective Date and arising from either such Partner's ownership of the Partnership or such Partner's involvement in the Partnership's business, <u>but not including any claims for default under the terms of this Agreement or any disputes regarding the accounting set forth in Section 11 or Schedule C</u>.

This Release herein extends to claims which the releasing party does not know or suspect to exist in his favor, which if known may have materially affected the decision to enter into this Release. Each Partner acknowledges that he is familiar with Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Partner expressly waives and relinquishes any rights or benefits which he may have under Section 1542 of the California Civil Code.

22. <u>Counterparts, Electronic Signatures</u>. This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument. The parties hereto agree that signatures transmitted electronically, including facsimile signatures, will be treated as originals.

23. <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and bind the successors, assigns, heirs, executors, and administrators of the Partners.

24. <u>Applicable Law</u>. This Agreement shall be construed under and in accordance with the laws of the State of California.

25. <u>Dispute Resolution</u>. The parties agree to submit any dispute arising out of or relating to this Agreement to independent neutral service Just Resolve LLC (www.justresolve.com), or its successor, for binding resolution according to its then-current rules, if the amount in controversy, as believed by the parties or Just Resolve, is less than or equal to $250,000. If Just Resolve does not undertake the matter, or if the amount believed to be in controversy is greater than $250,000, then the parties agree to submit the dispute for binding commercial rules arbitration administered by JAMS. Either party may commence a matter by requesting it in a written demand delivered to the administering service and to the other party

stating the subject of the dispute and the relief requested. Resolution will be held in Santa Clara County, California.

26. Other Instruments. The Partners covenant and agree that they will execute any other and further instruments and documents that are or may become necessary or convenient to effectuate and carry out this Agreement.

27. Headings. The headings used in this Agreement are used for administrative purposes only and do not constitute substantive matter to be considered in construing the terms of this Agreement.

28. Severability. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability shall not affect any other provision and this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been part of the Agreement.

29. Prior Agreements Superseded. This Agreement supersedes any prior understandings or written or oral agreements between the Partners regarding the subject matter, including the Partnership Agreement, but only to the extent that it may conflict with any of the provisions contained in this Agreement.

30. Survival of Representations and Warranties. The representations and warranties set forth in this Agreement are continuous and survive the Closing and any termination of this Agreement.

31. Costs; Expenses; Fees. The Partners will equally pay all costs, including expenses and attorneys' fees, associated with this Agreement.

32. Construction. This Agreement has been prepared by the Partnership's counsel, Strategy Law, LLP. The Partners agree that each Partner has had the opportunity to be represented by its own counsel for purposes of negotiating this Agreement and, that each Partner has received and has had the opportunity to revise this Agreement. Consequently, any rule of construction to the effect that ambiguities are to be resolved against the drafting Partner shall not apply in the interpretation of this Agreement or any amendment thereto. The Parties expressly waive the provisions of California Civil Code Section 1654.

33. Notices. All notices or other communications required or permitted by this Agreement or by law to be given by any Partner shall be in writing. All such notices and communications shall be deemed duly served and given to the other Partner: (a) on the date of personal delivery; (b) one business day following delivery by nationally-recognized air courier or confirmed electronic mail transmission; or (c) three business days after mailing with the United

States Postal Service by First Class Mail with postage pre-paid. For purposes hereof, notices and other communications hereunder shall be directed to the Partners at the following addresses:

Mahamedi:   Zurvan Mahamedi
            1901 South Bascom Ave., Suite 600
            Campbell, CA 95008
            vmahamedi@mppatentlaw.com (email)

Paradice:   William L. Paradice
            1999 South Bascom Ave., Suite 300
            Campbell, CA 95008
            tripparadice@gmail.com (email)

Either Partner may change his address for the purpose of receiving notices and other communications as herein provided by a written notice given in the manner aforesaid to the other Partner.

34.     Modification or Amendment. No amendment, change or modification of this Agreement shall be valid unless in writing and signed by both Partners.

IN WITNESS WHEREOF, the parties have executed this Agreement, effective as of the Effective Date.

PARTNERS:

_____
Zurvan Mahamedi

_____
William L. Paradice

SCHEDULE A

NOTICE OF WITHDRAWAL
9

## SCHEDULE B

## ASSETS ALLOCATED TO PARADICE

All furniture, computer equipment, and phones in Paradice's office

Computer workstations and phones for up to four employees that continue employment with Paradice

USPTO Customer Numbers:
12811
25670

## SCHEDULE C

## ACCOUNTS RECEIVABLE FORMULA SPREADSHEET

| Invoice No. | Client/Matter | Mahamedi share | Paradice share | Client Related Expenses to Partnership |
|---|---|---|---|---|
| ... | | | | |
| ... | | | | |
| | Preliminary Totals: | $total | $total | $total |
| | Additional costs due from Paradice to Partnership for one-half of outstanding liabilities as of 4/30/16, not including above costs to Partnership | | | |
| | Amounts due to Paradice from Partnership for forfeited profit sharing funds | | | |
| | Totals: | | | |

## ASSIGNMENT OF LIMITED LIABILITY PARTNERSHIP INTEREST
## MAHAMEDI PARADICE, LLP

This Assignment of Limited Liability Partnership Interest ("Assignment") is entered into as of April 30, 2016, by and between William L. Paradice III ("Paradice") and Zurvan Mahamedi ("Mahamedi"). The parties agree as follows:

1. <u>Assignment and Delegation</u>. For value received, Paradice assigns, transfers, and conveys to Mahamedi, all of Paradice's rights, title and interest in and to a 50% Partnership Interest ("Partnership Interest") in Mahamedi Paradice, LLP, a California limited liability partnership (the "Partnership"). Paradice delegates to Mahamedi all of Paradice's obligations under the terms of the Second Amended and Restated Limited Liability Partnership Agreement of the Partnership, dated on or around December, 2014 (the "Partnership Agreement"), with respect to the Partnership Interest.

2. <u>Acceptance and Assumption</u>. Mahamedi accepts the foregoing assignment and agrees to assume and perform all of the duties and obligations of Paradice under the terms of the Partnership Agreement with respect to the Partnership Interest.

4. <u>Counterparts</u>. This Assignment may be executed simultaneously in two or more counterparts, each one of which shall be deemed an original, but all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first written above.

PARADICE:

_____
William L. Paradice III

MAHAMEDI:

_____
Zurvan Mahamedi

# ASSIGNMENT OF LIMITED LIABILITY PARTNERSHIP INTEREST
# MAHAMEDI PARADICE, LLP

This Assignment of Limited Liability Partnership Interest ("Assignment") is entered into as of April 29, 2016, by and between Zurvan Mahamedi ("Mahamedi") and Perry J. Narancic ("Narancic"). The parties agree as follows:

1. <u>Assignment and Delegation</u>. For value received, Mahamedi assigns, transfers, and conveys to Narancic, all of Mahamedi's rights, title and interest in and to a 1% Partnership Interest ("Partnership Interest") in Mahamedi Paradice, LLP, a California limited liability partnership (the "Partnership"). Mahamedi delegates to Narancic all of Mahamedi's obligations under the terms of the Second Amended and Restated Limited Liability Partnership Agreement of the Partnership, dated on or around December, 2014 (the "Partnership Agreement"), with respect to the Partnership Interest.

2. <u>Acceptance and Assumption</u>. Narancic accepts the foregoing assignment and agrees to assume and perform all of the duties and obligations of Mahamedi under the terms of the Partnership Agreement with respect to the Partnership Interest.

4. <u>Counterparts</u>. This Assignment may be executed simultaneously in two or more counterparts, each one of which shall be deemed an original, but all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first written above.

**MAHAMEDI:**

_____
Zurvan Mahamedi

**NARANCIC:**

_____
Perry J. Narancic

{2083-001:00009609-3}